DocuSign Envelope ID: EB050219-D718-4B31-B7F0-A16DA557EC93



# PURCHASE AGREEMENT

THIS DOCUMENT IS MORE THAN A RECEIPT FOR MONEY.  IT IS INTENDED TO BE A LEGALLY BINDING AGREEMENT. READ IT CAREFULLY.

Marcus & Millichap Real Estate Investment Services of North Carolina, Inc. ("Agent"), as agent for Bryan S. Ross, Chapter 7 Trustee for Potomac Construction Biltmore, LLC (Case: 21-00040) ("Seller"), shall receive from BREI, LLC, a Maryland limited liability corporation or an entity under common control ("Buyer") proof of funds deposited into the escrow account of the Title Company in the sum of  $200,000.00  in the form of CERTIFIED CHECK OR WIRE TRANSFER within Five (5) Business Days after the date that all parties have signed this Purchase Agreement (the "Effective Date").  This sum is a deposit ("Deposit") to be applied to the purchase price of that certain real property (referred to as the "Property") located in Washington, DC, and more particularly described as follows:

| | | |
|---|---|---|
| **1900 Biltmore Street NW #1**<br>Washington, DC 20009<br>APN: 2549-0000-2046 | **1900 Biltmore Street NW #2**<br>Washington, DC 20009<br>APN: 2549-0000-2047 | **1900 Biltmore Street NW #3**<br>Washington, DC 20009<br>APN: 2549-0000-2048 |
| **1900 Biltmore Street NW #4**<br>Washington, DC 20009<br>APN: 2549-0000-2049 | **1900 Biltmore Street NW #5**<br>Washington, DC 20009<br>APN: 2549-0000-2050 | **1900 Biltmore Street NW #6**<br>Washington, DC 20009<br>APN: 2549-0000-2051 |
| **1900 Biltmore Street NW #7**<br>Washington, DC 20009<br>APN: 2549-0000-2052 | **1900 Biltmore Street NW #8**<br>Washington, DC 20009<br>APN: 2549-0000-2053 | **1900 Biltmore Street NW #9**<br>Washington, DC 20009<br>APN: 2549-0000-2054 |
| **1900 Biltmore Street NW #10**<br>Washington, DC 20009<br>APN: 2549-0000-2079 | **1900 Biltmore Street NW #11**<br>Washington, DC 20009<br>APN: 2549-0000-2080 | |
| **1900 Biltmore Street NW #P1**<br>Washington, DC 20009<br>APN: 2549-0000-2055 | **1900 Biltmore Street NW #P2**<br>Washington, DC 20009<br>APN: 2549-0000-2056 | |

## TERMS AND CONDITIONS

Seller agrees to sell the Property, and Buyer agrees to purchase the Property, on the following terms and conditions, and subject to Bankruptcy Court Approval:

1) **PURCHASE PRICE:**  The Purchase Price for the Property is SIX-MILLION-TWO-HUNDRED-THOUSAND-DOLLARS ($6,200,000.00).  The Purchase Price, less the amount of the Deposit paid by Buyer, and subject to appropriate adjustments and prorations as hereinafter provided, shall be paid as follows:

2) **DEPOSIT:**  The Deposit in the sum of TWO-HUNDRED-THOUSAND-DOLLARS ($200,000.00) shall be deposited by Buyer with the Title Company, Premium Title & Escrow, located at 3407 14th Street NW, Washington DC 20009 (Attn: Ben Soto), within Five (5) Business Days after the Effective Date. The Deposit shall be held as earnest money and shall be applied as part payment of the Purchase Price at closing or as otherwise provided herein.  If this Agreement is voided by Buyer for any reason permitted under this Agreement, the Deposit shall be refunded to Buyer, and no party hereto shall have any further rights to said Deposit.

3) **TITLE:**  Seller shall convey title to Property free and clear of liens pursuant to Bankruptcy Court Order and without exception for any rights of the tenants under the District of Columbia Tenant Opportunity to Purchase Act ("TOPA").  Seller shall convey by Trustee's Deed to Buyer (or such other person as Buyer may specify) marketable fee simple title subject only to the exceptions approved by Buyer in accordance with this Agreement.  Title shall be insurable by a standard ALTA owner's policy of title insurance issued by the Title Company with standard exceptions in the amount of the purchase price with premium paid by Buyer.

Bankruptcy Case No 21-00040 – Purchase Agreement             Buyer's Initials __*CPBB*__  Seller's Initials _____
Copyright Marcus & Millichap 2021

4829-0478-0779, v. 2

Exhibit A

4) **CLOSING:** Closing shall be held Thirty (30) Calendar Days following the later of (i) the expiration of the Inspection Period, or (ii) delivery to Purchaser of an unappealable order of the U.S. Bankruptcy Court for the District of Columbia approving the sale of the Property under this Agreement (the "Closing Date"), or at such other time as is reasonably agreeable to Buyer and Seller with at least five (5) days' notice prior to the Closing Date.  At the Closing, Seller shall execute and deliver to Buyer a trustee's deed subject to those exceptions permitted by this Agreement, an I.R.C. Section 1445 non-foreign affidavit, and any other documents reasonably required by the Title Company; and each party hereto shall execute and deliver such other documents necessary or appropriate to effect and complete the Closing.

Real property taxes, premiums on insurance acceptable to Buyer, interest on any debt being assumed or taken subject to by Buyer, and any other ongoing expenses or costs of the continued operation of the Property shall be prorated as of the Closing Date.  Security deposits, advance rentals, and the amount of any future lease credits shall be credited to Buyer at Closing.  The amount of any assessment not customarily paid with real property taxes shall be (select one "X") X  paid __ assumed by SELLER.  Buyer will pay for recordation tax and Seller will pay for transfer tax.

5) **NO FINANCING CONTINGENCY – THERE IS NO FINANCING CONTINGENCY**

6) **DUE DILIGENCE PERIOD:**  Buyer shall have Fifteen (15) Calendar Days following the execution of this Agreement, the ("Due Diligence Period"), to investigate the physical and environmental condition of the Property and to evaluate the economic feasibility, and satisfactory financing approvals.

Commencing upon full execution of this Agreement and continuing throughout the Due Diligence Period, the Buyer shall have the right to enter upon the Property, after not less than Two (2) Business Days' prior written notice to Seller, to conduct such tests, studies, and investigations the Buyer may reasonably deem necessary, provided, however, that no invasive testing will be conducted without Seller's prior written approval, such approval not to be unreasonably withheld, conditioned or delayed. All costs incurred in connection with inspections and studies shall be at the expense of the Buyer.  Buyer shall indemnify and hold the Seller harmless from all costs, damages, liabilities caused by Buyer in connection with due diligence.  Buyer shall repair damage to the Property as a result of studies conducted on behalf of the Buyer.  Buyer shall have no liability to any existing conditions discovered in connection with its investigation of the Property.

Commencing upon full execution of this Agreement, the Seller shall not make any decisions that will impact the current or future operations of the Property (e.g.: lease extensions or renewals, management agreements, new lease agreements, commencing eviction proceedings) without first notifying the Buyer and obtaining Buyer's approval, which shall not be unreasonably withheld, conditioned or delayed prior to the expiration of the Due Diligence Period.  Furthermore, at all times during this transaction, the Seller shall inform the Buyer of any changes to the building operations as they are made aware of such changes (e.g. tenant(s) existing or anticipated default, tenant(s) vacates or requests an early termination, tenant(s) request for a lease extension or renewal).

From the time the Due Diligence Period expires until 100% of the interest in the Property's conveys to the Buyer, the Seller shall not make any decisions that will impact the current or future operations of the Property (e.g.: lease extensions or renewals, management agreements, new lease agreements, commencing eviction proceedings) without first notifying the Buyer and obtaining Buyer's approval, which approval may be withheld in Buyer's sole discretion.

Upon written notice at any time during the Due Diligence Period, Buyer may elect, at its sole and absolute discretion, to terminate this Agreement and declare said Agreement null and void, with the immediate return of its Deposit plus any accrued interest.  After such event, there shall be no further obligation between the parties.  If no such notification is provided by Buyer, then upon the expiration of the Due Diligence Period, this Agreement shall be deemed to be in full force and effect and the Deposit will become non-refundable to the Buyer.  Except as otherwise provided for in this Agreement, in the event the Due Diligence Period expires and the Buyer fails to go to Closing, the Deposit and all accrued interest shall be released to the Seller as liquidated damages.

7) **CONDITIONS PRECEDENT TO CLOSING:** It shall be a condition precedent to Buyer's obligation to Close that all of the following conditions shall have been satisfied:

   a. Buyer has the opportunity to review and accept the Property's title or make Seller aware of any title objections until the expiration of the Due Diligence Period.  Seller's and Buyer's obligations hereunder are contingent upon Seller being able to convey good, marketable and insurable title to the Property or cure any title objections.
   b. Seller shall deliver the Property free and clear of all tenancies, encumbrances, conditions, and other recorded title matters and without any exception for TOPA on owner's title insurance policy except for the existing approved matters of record or tenancies/encumbrances/management contracts that are pre-approved.
   c. All utilities, including water, sanitary sewer, electric and telephone, in the capacities as of the last day of the Due Diligence Period are available at the Property line.

d.  A property and boundary survey has been completed so long as the completion date does not exceed Forty-Five (45) Calendar Days following the execution of this Agreement in which case this Condition shall have been deemed satisfied.

8) **PERSONAL PROPERTY:** No personal property will be conveyed to Buyer under the terms of this Agreement except those items which are fixtures on the Property. No accounts receivable, including rent due to the Seller, will be conveyed to the Buyer.

9) **CONDITION OF PROPERTY:** It is understood and agreed that the Property is being sold "**AS IS**"; that Buyer has, or will have prior to the Closing Date, inspected the Property; and that neither Seller nor Agent makes any representation or warranty as to the physical condition or value of the Property or its suitability for Buyer's intended use. The parties recognize and agree that Buyer is acquiring the property in "as-is, where-is" condition, with all faults. The property shall be in substantially the same condition at closing as on the effective date, ordinary wear and tear and damage by casualty excepted. Buyer hereby acknowledges that it shall be acquiring the property in reliance solely upon its own investigations, studies and due diligence and, except as expressly provided in this agreement, shall not rely on any statement, representation, or warranty whatsoever by Seller, Agent or their respective officers, directors, employees, shareholders, members, agents, contractors or representatives (collectively referred to in this agreement as the "Seller/Agent Parties"). Buyer understands and acknowledges that, except as expressly provided in this agreement, the Seller/Agent Parties make no representations or warranties relating to the property including, without limitation, design, condition or repair, value, expense of operation, income potential, compliance with drawings or specifications, absence of defects, absence of faults, flooding, or compliance with laws, rules and regulations, taxes, the expressed warranties of merchantability and fitness for a particular purpose, or any other fact or condition which has or might affect the property or the ownership, use, occupancy, operation, condition, repair, value, or income potential thereof.

**Buyer's Initials** _CPBB_

10) **RISK OF LOSS:** Risk of loss to the Property shall be borne by Seller until title has been conveyed to Buyer. In the event that the improvements on the Property are destroyed or materially damaged between the Effective Date of this Agreement and the date title is conveyed to Buyer, Buyer shall have the option of demanding and receiving back the entire Deposit and being released from all obligations hereunder, or alternatively, taking such improvements as Seller can deliver. Upon Buyer's physical inspection and approval of the Property, Seller shall maintain the Property through closing in the same condition and repair as approved, reasonable wear and tear excepted.

11) **POSSESSION:** Possession of the Property shall be delivered to Buyer at closing free and clear of all tenants and any other parties claiming a right to occupy all or any portion of the Property.

12) **LIQUIDATED DAMAGES: By placing their initials immediately below, Buyer and Seller agree that it would be impracticable or extremely difficult to fix actual damages in the event of a default by Buyer, that the amount of Buyer's Deposit hereunder (as same may be increased by the terms hereof) is the parties' reasonable estimate of Seller's damages in the event of Buyer's default by reason of its failure to close in accordance with the terms and conditions of this Agreement, and that upon Buyer's default in its purchase obligations under this agreement, not caused by any breach by Seller, Seller shall be released from its obligations to sell the Property and shall retain Buyer's Deposit as liquidated and agreed upon damages, which shall be Seller's sole and exclusive remedy in law or at equity for Buyer's default.**

13) **BUYER EXCHANGE:** Seller agrees to cooperate should Buyer elect to purchase the Property as part of a like-kind exchange under IRC Section 1031. Buyer's contemplated exchange shall not impose upon Seller any additional liability or financial obligation, and Buyer agrees to hold Seller harmless from any liability that might arise from such exchange. This Agreement is not subject to or contingent upon Buyer's ability to dispose of its exchange property or effectuate an exchange. In the event any exchange contemplated by Buyer should fail to occur, for whatever reason, the sale of the Property shall nonetheless be consummated as provided herein.

14) **AUTHORIZATION:** Buyer and Seller authorize agent to disseminate sales information regarding this transaction, including the purchase price of the Property.

15) **EXCLUSIVE LISTING**: Marcus & Millichap Real Estate Investment Services of North Carolina, Inc. is the exclusive listing broker of the property that is the subject of this transaction. Under District of Columbia law, Marcus & Millichap represents the Seller as the Seller's agent. Marcus & Millichap is not the agent of the Buyer; however, Marcus & Millichap does have the following affirmative legal obligations to the Buyer:

   a.  Diligent exercise of reasonable skill and care in the performance of its duties.
   b.  A duty of honest and fair dealing and good faith.
   c.  A duty to disclose all facts known to it materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the Buyer.

16) **OTHER BROKERS:** Buyer and Seller agree that, in the event any broker other than Agent or a broker affiliated with Agent is involved in the disposition of the Property, Agent shall have no liability to Buyer or Seller for the acts or omissions of such other broker, who shall not be deemed to be a subagent of Agent.
Matt Weber and Andrew Genova of Avison Young represent the Buyer in this transaction ("Buyer's Broker"). Seller's Broker agrees to pay Buyer's Broker a real estate brokerage commission of Two (2) percent of the Purchase Price by the Seller at Closing. Seller's Broker, if any, will be compensated per the terms of a separate agreement.

17) **LIMITATION OF LIABILITY:** Except for Agent's gross negligence or willful misconduct, Agent's liability for any breach or negligence in its performance of this Agreement shall be limited to the greater of $50,000 or the amount of compensation actually received by Agent in any transaction hereunder.

18) **SCOPE OF AGENT'S AUTHORITY AND RESPONSIBILITY:** Agent shall have no authority to bind either Buyer or Seller to any modification or amendment of this Agreement. Agent shall not be responsible for performing any due diligence or other investigation of the Property on behalf of either Buyer or Seller, or for providing either party with professional advice with respect to any legal, tax, engineering, construction or hazardous materials issues. Except for maintaining the confidentiality of any information regarding Buyer or Seller's financial condition and any future negotiations regarding the terms of this Purchase Agreement, Buyer and Seller agree that their relationship with Agent is at arm's length and is neither confidential nor fiduciary in nature.

19) **BROKER DISCLAIMER:** Buyer and Seller acknowledge that, except as otherwise expressly stated herein, Agent has not made any investigation, determination, warranty or representation with respect to any of the following: (a) the financial condition or business prospects of any tenant, or such tenant's intent to continue or renew its tenancy in the Property; (b) the legality of the present or any possible future use of the Property under any federal, state or local law; (c) pending or possible future action by any governmental entity or agency which may affect the Property; (d) the physical condition of the Property, including but not limited to, soil conditions, the structural integrity of the improvements, and the presence or absence of fungi or wood-destroying organisms; (e) the accuracy or completeness of income and expense information and projections, of square footage figures, and of the texts of leases, options, and other agreements affecting the Property; (f) the possibility that lease, options or other documents exist which affect or encumber the Property and which have not been provided or disclosed by Seller; or (g) the presence or location of any hazardous materials on or about the Property, including, but not limited to, asbestos, PCB's, or toxic, hazardous or contaminated substances, and underground storage tanks.

   Buyer agrees that investigation and analysis of the foregoing matters is Buyer's sole responsibility and that Buyer shall not hold Agent responsible therefor. Buyer further agrees to reaffirm its acknowledgment of this disclaimer at closing and to confirm that it has relied upon no representations of Agent in connection with its acquisition of the Property.

   **Buyer's Initials** _CPBB_ **Seller's Initials** _____

20) **LEAD-BASED PAINT HAZARDS:** Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase. (SELLER TO INITIAL ONE BELOW):

   (_____) 1. Seller warrants that the Property was constructed after 1978.
   (__X*__) 2. Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

   *Seller is a Chapter 7 Bankruptcy Trustee and has no personal knowledge with regard to the Property. All disclosures made are on information and belief only.

21) **MOLD/ALLERGEN ADVISORY AND DISCLOSURE**: Buyer is advised of the possible presence within properties of toxic (or otherwise illness-causing) molds, fungi, spores, pollens and/or other botanical substances and/or allergens (e.g. dust, pet dander, insect material, etc.). These substances may be either visible or invisible, may adhere to walls and other accessible and inaccessible surfaces, may be embedded in carpets or other fabrics, may become airborne, and may be mistaken for other household substances and conditions. Exposure carries the potential of possible health consequences. Agent strongly recommends that Buyer contact the State Department of Health Services for further information on this topic.

    Buyer is advised to consider engaging the services of an environmental or industrial hygienist (or similar, qualified professional) to inspect and test for the presence of harmful mold, fungi, and botanical allergens and substances as part of Buyer's physical condition inspection of the Property, and Buyer is further advised to obtain from such qualified professionals information regarding the level of health-related risk involved, if any, and the advisability and feasibility of eradication and abatement, if any.

    Buyer is expressly cautioned that Agent has no expertise in this area and is, therefore, incapable of conducting any level of inspection of the Property for the possible presence of mold and botanical allergens. Buyer acknowledges that Agent has not made any investigation, determination, warranty or representation with respect to the possible presence of mold or other botanical allergens, and Buyer agrees that the investigation and analysis of the foregoing matters is Buyer's sole responsibility and that Buyer shall not hold Agent responsible therefore.

22) **DISPUTES: If a controversy arises with respect to the subject matter of this Purchase Agreement or the transaction contemplated herein (including but not limited to the parties' rights to the Deposit or the payment of commissions as provided herein), Buyer, Seller and Agent agree that such controversy shall be settled before the U.S. Bankruptcy Court for the District of Columbia and agree that such Court shall have authority to issue final orders and judgments on all matters relating to this Purchase Agreement.**

23) **SUCCESSORS & ASSIGNS:** This Agreement and any addenda hereto shall be binding upon and inure to the benefit of the heirs, successors, agents, representatives and assigns of the parties hereto.

24) **TIME:** Time is of the essence of this Agreement.

25) **NOTICES:** All notices required or permitted hereunder shall be given to the parties in writing (with a copy to Agent) at their respective addresses as set forth below. Should the date upon which any act required to be performed by this Agreement fall on a Saturday, Sunday or holiday, the time for performance shall be extended to the next business day.

26) **ADDENDA:** Any addendum attached hereto and either signed or initialed by the parties shall be deemed a part hereof. This Agreement, including addenda, if any, expresses the entire agreement of the parties and supersedes any and all previous agreements between the parties with regard to the Property. There are no other understandings, oral or written, which in any way alter or enlarge its terms, and there are no warranties or representations of any nature whatsoever, either express or implied, except as set forth herein. Any future modification of this Agreement will be effective only if it is in writing and signed by the party to be charged.

27) **GOVERNING LAW:** This Agreement shall be governed by and construed in accordance with the laws of the District of Columbia and the U.S. Bankruptcy Code.

28) **EMINENT DOMAIN:** In the event that prior to the closing all or any portion of the Property is condemned, or condemnation proceedings have been instituted by or on behalf of any public or quasi-public entity or for any public or quasi-public use or purpose, then, in the event that such condemnation substantially and materially adversely affects the Property, Buyer shall have the option to: (i) terminate this Agreement and receive the return of the deposit and all interest accrued thereon, or (ii) proceed with the closing and receive a credit against the Purchase Price of any award received or to be received.

29) **SEVERABILITY:** In the event any term or provision of this Agreement shall be held illegal, unenforceable or inoperative as a matter of law, the remaining terms and provisions of this Agreement shall not be affected thereby and shall remain in full force and effect.

30) **VACANCY**: Property shall be delivered vacant and free of any tenancy at Closing.

THE PARTIES ARE ADVISED TO CONSULT THEIR RESPECTIVE ATTORNEYS WITH REGARD TO THE LEGAL EFFECT AND VALIDITY OF THIS PURCHASE AGREEMENT.

The undersigned Buyer hereby offers and agrees to purchase the above-described Property for the price and upon the terms and conditions herein stated. The undersigned Buyer hereby acknowledges receipt of an executed copy of this Agreement. This Agreement is subject to the attached Bankruptcy Addendum. In the event a conflict exists between this Purchase Agreement and the attached Bankruptcy Addendum, the Bankruptcy Addendum will control.

BREI, LLC

| | | | |
|---|---|---|---|
| BUYER: | *Cesar P. Bouillon B.* (DocuSigned by: 633868FB7F1B4C9...) Cesar Bouillon Manager | ADDRESS: | 3301 Rolling Rd, Chevy Chase, MD 20815 |
| DATE: | 6/1/2021 | TELEPHONE: | 3012838815 |

**SELLER'S ACCEPTANCE AND AGREEMENT TO PAY COMMISSION:**

The undersigned Seller agrees to sell the Property to Buyer for the price and on the terms and conditions stated herein, subject to Bankruptcy Court approval. Seller acknowledges receipt of an executed copy of this Agreement and authorizes Agent to deliver an executed copy to Buyer.

Seller reaffirms its agreement to pay to Agent and Buyer's Agent a real estate brokerage commission pursuant to the terms of that certain Representation Agreement between Agent and Seller effective February 26th, 2021 and the terms and provisions of Section 16 above, which shall remain in full force and effect. Said commission is payable in full on the Closing Date and shall be paid in cash at closing from the Seller's proceeds of the sale, subject to Bankruptcy Court approval.

.

By: Bryan S. Ross

| | | | |
|---|---|---|---|
| SELLER: | Chapter 7 Trustee for Potomac Construction Biltmore, LLC (Case: 21-00040) | ADDRESS: | ON FILE |
| DATE: | | TELEPHONE: | ON FILE |

Agent accepts and agrees to the foregoing.

AGENT: **MARCUS & MILLICHAP REAL ESTATE INVESTMENT SERVICES OF NORTH CAROLINA, INC.**

| | | | |
|---|---|---|---|
| BY: | John M. Zupancic III | ADDRESS: | 7200 Wisconsin Avenue (Suite 1101) Bethesda, MD 20814 |
| DATE: | | TELEPHONE: | (202) 536-3788 |

PARTIES UNDERSTAND AND ACKNOWLEDGE THAT BROKER IS NOT QUALIFIED TO PROVIDE, AND HAS NOT BEEN CONTRACTED TO PROVIDE, LEGAL, FINANCIAL OR TAX ADVICE, AND THAT ANY SUCH ADVICE MUST BE OBTAINED FROM PARTIES' ATTORNEY, ACCOUNTANT OR TAX PROFESSIONAL. —DS

Bankruptcy Case No 21-00040 – Purchase Agreement    Buyer's Initials _CPBB_  Seller's Initials _____
Copyright Marcus & Millichap 2021

4829-0478-0779, v. 2

Bankruptcy Addendum to Purchase Agreement

1.   Bryan S. Ross, ("Seller" or "Trustee") is the Court appointed Chapter 7 Trustee for the bankruptcy estate of Potomac Construction Biltmore, LLC., whose case is currently pending in the United States Bankruptcy Court for the District of Columbia (the "Bankruptcy Court") as Case No. 21-00040.

2.   This Purchase Agreement ("Agreement") and sale of the property are subject to the notice and hearing requirements of the Bankruptcy Code, Bankruptcy Rules, and the Local Rules of the Bankruptcy Court for the District of Columbia.

3.   This Agreement and final sale of the property are subject to Bankruptcy Court approval of sale and higher and better offers. Sale is subject to an order of the Bankruptcy Court approving the sale, and authorizing sale free and clear of liens, claims, leases, tenants and any other parties claiming a right to occupy any portion of the Property. Sale is subject to satisfying any of the sub-sections of 11 U.S.C. § 363(b), (f), and (h), or requirements for a sale subject to existing liens, and sections of 11 U.S.C. § 365.

4.   The Property is sold in its "as-is" condition as of ratification of a contract. Seller makes no representations as to the condition of the property other than that it shall be conveyed to the Buyer free of any tenants, occupants or personal property belonging to others.

5.   The liability of the Seller is limited to the return of the earnest money deposit, except as noted in Paragraph 9 below

6.   No sale commission will be due except upon a successful sale and settlement.

7.   Seller will convey the Property by Trustee's Deed.

8.   All Seller disclosures are upon information and belief only and not personal knowledge.

9.   If another party is awarded the right to purchase the Property, upon closing of the Property, Seller agrees to pay Buyer a breakup fee in the amount of Twenty-Five Thousand Dollars ($25,000.00) which is the estimated due diligence and legal fees incurred or to be incurred by Buyer in connection with this Agreement.

10.  Notwithstanding anything to the contrary contained in the Agreement or this Addendum, if the Bankruptcy Court has not entered an order approving the sale within sixty (60) days of the date of this Agreement and Addendum, Buyer may terminate this Agreement by written notice to Seller and the Title Company in which event the Title Company shall promptly return the Deposit to Buyer and both parties shall thereafter be relieved of all further obligations under the Agreement.

11.  All other terms and conditions of the Agreement remain in full force and effect except that if there is a conflict between this Addendum and the remaining portions of the Agreement, this Addendum will control.

_____     _____
Seller: Bryan S. Ross, Chapter 7 Trustee                                Date

DocuSigned by:
*Cesar P. Bouillon B.*                                                  6/1/2021
633868FB7F1B4C9...
_____     _____
Buyer: BREI, LLC
       By Cesar P. Bouillon B., Manager                                 Date

Bankruptcy Case No 21-00040 – Purchase Agreement     Buyer's Initials __CPBB__  Seller's Initials _____
Copyright Marcus & Millichap 2021

4829-0478-0779, v. 2

_____        _____
Agent: John M. Zupancic III, Marcus & Millichap                    Date

## FIRST AMENDMENT TO PURCHASE AGREEMENT

THIS FIRST AMENDMENT TO PURCHASE AGREEMENT (this "**Amendment**") ") is made as of the ___ day of June, 2021, by and between BRYAN S. ROSS, CHAPTER 7 TRUSTEE FOR POTOMAC CONSTRUCTION BILTMORE, LLC (CASE: 21-00040) (the "**Seller**"), and BREI, LLC, a Maryland limited liability company ("**Buyer**").

### WITNESSETH:

WHEREAS, Seller and Buyer entered into that certain Purchase Agreement dated as of June 21, 2021 (the "**Agreement**"), for the sale and purchase of that certain improved real property known by street address as 1900 Biltmore Street, Washington, D.C., and more particularly described in the Agreement (the "**Property**").

WHEREAS, Seller and Buyer desire to modify the Agreement as set forth below.

NOW, THEREFORE, for and in consideration of the mutual promises of the parties and other good and valuable consideration, receipt and sufficiency of which are hereby acknowledged, the parties intending to be legally bound do hereby agree as follows:

1. <u>Recitals; Capitalized Terms</u>. The Recitals set forth above are hereby incorporated in and made a part of this Amendment. Capitalized terms as used in this Amendment and not otherwise defined herein shall have the same meanings as set forth in the Agreement.

2. <u>Conditions Precedent</u>. Section 7.a. of the Agreement is hereby modified to provide that Seller shall be required to provide Buyer at Closing marketable title to the Property free and clear of all monetary liens and encumbrances, without any exception for any rights of the tenants under the District of Columbia Tenant Opportunity to Purchase Act ("TOPA"), and insurable with a standard ALTA owner's policy of title insurance issued by the Title Company with standard exceptions in the amount of the purchase price with premium paid by Buyer.

3. <u>Ratification</u>. Except as amended by the provisions of this Amendment, all terms and conditions of the Agreement shall remain in full force and effect.

4. <u>Multiple Counterparts</u>. This Amendment may be executed in any number of counterparts and by facsimile or pdf copies, and any such facsimile or pdf copy shall be deemed to be an original, and any and all counterparts, when considered as a whole, shall constitute a valid agreement of the parties.

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*
*[SIGNATURE PAGE FOLLOWS]*

DocuSign Envelope ID: 614708A1-54E7-4A47-88EC-836687725440

-2-

IN WITNESS WHEREOF, the parties hereto have executed or caused this Amendment to be executed, all as of the day and year first above written.

SELLER:

**Bryan S. Ross, Chapter 7 Trustee for Potomac Construction Biltmore, LLC (Case 21-00040)**

By: _____

BUYER:

**BREI, LLC**, a Maryland limited liability company

By: _____
    Cesar Bouillon, Manager

4850-1536-2031, v. 1